UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID MIDKIFF, and )<br>SANDRY MIDKIFF, )<br>   )<br>   Plaintiffs, )<br>   )<br>v. )<br>   )<br>3M COMPANY, AS SUCCESSOR BY )<br>MERGER TO MINNESOTA MINING )<br>& MANUFACTURING COMPANY )<br>AND/OR ITS PREDECESSORS/ )<br>SUCCESSORS IN INTEREST )<br>MINE SAFETY APPLIANCES )<br>   )<br>   Defendants.   ) | Cause No.: 4:08CV1221RWS<br><br><br><br>JURY TRIAL DEMANDED |

**RESPONSE TO DEFENDANT 3M'S MOTION FOR SUMMARY JUDGMENT**

COME NOW, David Midkiff and Sandra Midkiff and file this response to the Defendant's Motion for Summary Judgment and would show the following:

**I.   Statement of Facts**

1. The Defendant has moved for summary judgment on the issue of limitations. The Defendant is correct in pointing out that David Midkiff was diagnosed with silicosis by Dr. Peter Tuteur of Washington University on August 2, 2002. See, Defendant's Exhibit B, note at page 1, visit dated August 2, 2002. Conspicuously missing from Defendant's motion is a medical record made two weeks later, on August 14, 2002, by another pulmonologist Dr. W. Mark Breite, which states as follows:

> Briefly, this is a 50 year old white male last seen in our office on 2-12-02. The patient apparently seen Dr. Tutor at Barnes and was told he had Silicosis. The patient returns for follow up. He is now wearing a full respirator at work, which is appropriate. **The patient does not have a typical**

> **pattern for this disorder in my opinion and I respectively disagree with Dr. Tutor**. He does not have restrictive physiology and he may well have a respiratory bronchiolitis due to inhalation of mineral dust at the work place. **Whether or not this will develop into Silicosis in the future is unclear.**

See, Plaintiff's Exhibit A, Thoracic & Critical Care Medicine Records, narrative of Dr. W. Mark Breite, M.D., Pulmonary & Critical Care Associates, P.C. page 8, August 14, 2002 (emphasis added).

    2. This was not the first time that Mr. Midkiff had been told by Dr. Breite he did **not** have silicosis. On February 2, 2002, Dr. Breite informed Mr. Midkiff the following: **"He does not have restrictive physiology to justify the diagnosis of silicosis and he does not have mediastinal lymph nodes to justify the diagnosis of silicosis either."** See Plaintiff's Exhibit B, Thoracic & Critical Care Medicine Records, narrative of Dr. W. Mark Breite, M.D., Pulmonary & Critical Care Associates, P.C., page 14, February 12, 2002 (emphasis added). Dr. Breite had been treating Mr. Midkiff since 1998. See Plaintiff's Exhibit D, Affidavit of David Midkiff. Dr. Tuteur had only seen Mr. Midkiff in this isolated instance in 2002. Therefore in 2002, Mr. Midkiff had been told twice, by his pulmonary doctor, he did **not** have silicosis.

    3. Based upon this medical evidence, Mr. Midkiff did not know if he in fact had silicosis by August 14, 2002, because he had been told that Dr. Tuteur's diagnosis was incorrect. During 2002 and 2003, Mr. Midkiff was confused as to his actual medical condition, because of conflicting reports from his doctors. As Mr. Midkiff explains:

> Based upon these two conflicting opinions, from two doctors who specialized in lung disease, I was unsure of my medical condition. I did not know which doctor was correct. I have no expertise in medicine and had no ability to evaluate the conflicting opinions of my doctors. At this

> point and time, I was unsure whether I had silicosis. My uncertainty was reinforced by the fact that Dr. Breite had also told me on August 14, 2002 that I did not have silicosis. This opinion was therefore longer standing than the new opinion offered by Dr. Tuteur, who I only saw that one time in 2003 and would not see again until September, 2005.

See, Exhibit D, Affidavit of David Midkiff. Therefore, in the year 2002 there were conflicting medical reports, with one physicians repeatedly disagreeing by indicating that Mr. Midkiff did not have silicosis.

    4. With this contradicting medical evidence, Plaintiff went to a third pulmonologist, Dr. Joseph Ojile, on May 27, 2003. *Id*. He was sent to Dr. Ojile at the request of his employer, ISP, Inc. However, at the May 27, 2003 appointment, Dr. Ojile talked to Mr. Midkiff about his general medical findings, but did not state a diagnosis to Mr. Midkiff. *Id*. This is confirmed by the following medical entry made to Mr. Midkiff's family doctor, Dr. Michael Toney on August 18, 2003:

> The pt reports that he has seen a specialist who told him he should not be working. This was on May 22[1]. **The pt reports that he still has not heard anything.**

See, Defendant's Exhibit D, medical record of Michael Toney, D.O., August 18, 2003. Consequently, at least by August 18, 2003, Mr. Midkiff had not "heard anything" from the third pulmonary specialist. All he knew is that one doctor had diagnosed him with silicosis in 2002 and his regular pulmonologist had steadfastly disagreed, leaving Mr. Midkiff confused about his medical condition. It is undisputed that Mr. Midkiff continued working during 2003. When he filed his claim for disability, Mr. Midkiff listed the date of September 10, 2003 as his last day. See Exhibit C, Prudential Group

---

[1] The appointment was actually May 27, 2003.

3

Disability Insurance, Employee Statement, September 12, 2003. This claim form demonstrates that Mr. Midkiff did not claim disability before this date because he could not verify the nature of his disability. See Exhibit D.

5. In the years 2002 and 2003 there was conflicting medical evidence. Experts specializing in lung disease openly disagreed as to Mr. Midkiff's diagnosis and informed him of these disagreements. Based upon these disagreements, Mr. Midkiff was unable to ascertain whether he suffered from any occupational lung disease and whether he had a compensable injury or an ordinary disease of life. See, Plaintiffs Exhibit D.

## II. Argument and Authorities

### A. Standard of Review

6. A federal court exercising diversity jurisdiction is required "to apply the law of the forum when ruling on statute of limitations." *Nettles v. American Tel. and Tel. Co.,* 55 F. 3d 1358, 1362 (8th Cir. 1995)*;* quoting *Renfroe v. Eli Lilly & Co.,* 686 F. 2d 642, 646 (8th Cir. 1982). Furthermore, summary judgment evidence must be "viewed in the light most favorable to the nonmoving party." *Irving v. Dormire,* 586 F. 3d 645, 648 (8th Cir. 2009). This court should also "allow the adverse party to benefit from all reasonable inferences to be drawn from the evidence." *Efting v. Tokai Corp.,* 75 F. Supp. 2d 1006, 1008 (W.D. Mo. 1999).

7. "[W]here the issue of limitations involve determinations [of when a claim begins to accrue], summary judgment cannot be granted unless the evidence is so clear that there is no genuine factual issue and the determinations can be as a matter of law." *Doe v. The Capuchin Franciscan Friars,* 2008 U.S. Dist. Mo. LEXIS 6437, p. 6. *quoting, Hildebrand v. Allied Corp.,* 839 F. 2d 396, 399 (8th Cir. 1987). "When

contradictory conclusions can be drawn from the evidence, the running of the statute of limitations [is] a jury question." *Hogan v. Armstrong World Industries,* 840 S.W. 2d 230, 235 (Mo. Ct. App. 1992). In this case, because at least two of Mr. Midkiff's physicians specializing in pulmonology openly disagreed about whether he had silicosis in 2002, a genuine issue of material fact exists as to when Mr. Midkiff knew or should have known of his condition of silicosis. Accordingly, the Defendant's motion for summary judgment should be denied.

> **B. Mr. Midkiff's injury of silicosis was not capable of ascertainment in 2003 because pulmonary doctors openly disagreed over his diagnosis and condition.**

8. The Defendant correctly states that the Missouri statute of limitations for product liability and bodily injury is five years. *See,* Mo. Rev. Stat. § 516.120 (4) (2009). The statute provides:

> "[F]or purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is **capable of ascertainment,** and if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained."

Mo. Rev. Stat. § 516.100 (2009) (emphasis added). Therefore, a determination must be made by this Court, when applying Missouri law, as to whether a genuine issue of material fact exists as to when Mr. Midkiff's occupational lung injury of silicosis/pneumoconiosis was "capable of ascertainment." *Id.* The capable of ascertainment standard was discussed exhaustively by the Missouri Supreme Court in *Powel v. Chaminade College Preparatory, Inc.,* 197 S.W. 3d 576 (Mo. 2006). In *Powel,* the Court was faced with a limitations challenge as it related to sexual abuse allegations

5

against the clergy. The Supreme Court conducted a 40 year analysis of the Missouri statute and case law. The Court instructed that based upon Section 561.100, "a court **cannot** make the time the wrong is done or the technical breach of duty occurs the time when the cause of action accrues." *Id. at 582* (emphasis supplied). The Court held that the true standard is a determination of when the damages are capable of ascertainment.

> Although this Court has not previously clearly articulated a specific, generally applicable test to be used in making this determination, a consistent approach is evident upon careful review of this Court's decisions from the last 40 years: **the statute of limitations begins to run when the "evidence was such to place a reasonably prudent person on notice of a potentially actionable injury."** At that point, damages would be sustained and capable of ascertainment as an objective matter.

*Id.* (emphasis supplied) *quoting, Bus Men's Assurance Co. of America v. Graham,* 984 S.W. 2d 501, 507 (Mo. Banc 1999). In its further review of Missouri precedent, the Court observed that until the Plaintiff has "sufficient knowledge to be put on 'inquiry notice' of the wrong and damages, the standard is not met." *Id. at 583*. The Court further explained that the Plaintiff must be able to "**objectively** . . . discover or made known the fact of damage." *Id* (emphasis added).

9. The Defendant argues *Elmore v. Owens-Illinois, Inc.,* 673 S.W. 2d 434 (Mo. Banc 1984) is proper precedent for the proposition that the capable of ascertainment standard dictates that a cause of action does not accrue until the "date of the diagnosis" is made by the Plaintiff's doctor. *Id.* at 436. *Elmore* appears to apply an objective standard as discussed by the subsequent *Powel* decision, adhering to the date of diagnosis as the standard.

6

10. However, in this case, Mr. Midkiff did not receive a single undisputed diagnosis. Mr. Midkiff received two conflicting diagnoses within two weeks from two doctors who were both lung experts. Under these facts, a reasonably prudent person would not necessarily believe he had silicosis. All a reasonably prudent person could ascertain is that two doctors disagreed about the nature of the medical problem. These facts raise a fundamental fact question as to when Mr. Midkiff actually knew that he had a confirmed diagnosis of silicosis.

11. Missouri courts have recognized that, in the context of an occupational illness, the breathing difficulties and the diagnosis of the occupational lung disease must "come together" for the plaintiff before a cause of action accrues. *Hogan,* 840 S.W. 2d at 234; *citing, Elmore v. Owens Illinois,,* 673 S.W. 2d at 434. For example, in *Hogan,* Missouri Court of Appeals held that a fact issue regarding the date of diagnosis existed. The Defendant argued in *Hogan* that the Plaintiff had been diagnosed much earlier than alleged. However, because the Plaintiff testified he was never told by the doctor of the diagnosis alleged by the defendant, "contradictory conclusions may be drawn from the evidence" and the running of the statute of limitations was a jury question. *Id.*

12. In this case, Dr. Tuteur's diagnosis cannot serve as the controlling date of diagnosis, because it is rejected by Dr. Breite two weeks later. Both of these doctors are pulmonologists and Dr. Breite had been treating Mr. Midkiff for a longer period of time. Based upon this contradicting evidence, a reasonably prudent person could not have been placed on notice of a potentially actionable injury at the time of Dr. Tuteur's diagnosis in 2002. All that a reasonably prudent person could ascertain in August 2002 is that a disagreement between doctors existed regarding the medical diagnosis.

13. The Defendant cites the medical record of Dr. Toney, dated February 4, 2002 for the proposition that Mr. Midkiff was indicating silicosis to his doctor. That is not what the medical entry states. As explained by Mr. Midkiff, he was "only informing Dr. Toney of what Dr. Tuteur had told" him. See, Exhibit D, p. 1. This is illustrated by Dr. Toney's statement in Defendant's exhibit C: "The pt reports that he [Dr. Tuteur] said he had silicosis." Mr. Midkiff did not report to Dr. Toney that he, in fact, had silicosis nor does this medical record reveal, in any way, that this was Mr. Midkiff's opinion.

14. Mr. Midkiff's state of mind is reflected by the following testimony:

> "In light of Dr. Breite's statement two weeks after Dr. Tuteur's visit, I was unsure of my diagnosis. That is why I explained to Dr. Toney only what the doctor "said" not that I actually had the illness."

*Id*. at p. 1-2. Finally, because of this conflict, Mr. Midkiff testifies that even when he was asked to leave work on September 10, 2003, he was unsure of his diagnosis. *Id.* at p. 2. Nevertheless, he did file a claim for disability on September 12, 2003. See Exhibit C, Prudential Group Disability Insurance, Employee Statement, September 12, 2003. This claim was filed only after Mr. Midkiff learned of Dr. Ojile's opinion after September 10, 2003. See Exhibit D.

15. At the very least, it was not until he filed a claim for disability on September 12, 2003, that one might reasonably infer that Mr. Midkiff knew or should have known of his diagnosis of silicosis. During 2002 and 2003, Mr. Midkiff was faced with conflicting opinions from his doctors; yet, he continued working and filed no lung disability claim. He did not file a claim because he could not ascertain the nature of his condition. A cause of action does not begin to run until the Plaintiff "had notice and knowledge of the true nature of the disease". *Farrar v. San Francisco Railway Co.,* 361 Mo. 408, 235 S.

8

W. 2d 391, 392 (1950) (cause of action accrues when Plaintiff became disabled with silicosis). Mr. Midkiff cannot be held to a standard of knowing the "true nature" of his disease when his own doctors could not even agree on the nature of his condition.

16. In this case, Mr. Midkiff did not know he had a confirmed case of silicosis until his employer told him of Dr. Ojile's diagnosis on September 12, 2003. This lawsuit was filed on August 21, 2008, which was within the five year Missouri statute of limitations if the controlling date is the time Mr. Midkiff filed his claim for disability on September 10, 2003. Consequently, this case was timely filed and this Motion for Summary Judgment should be denied.

17. Because of the very fundamental disagreement between expert physicians in 2002 regarding whether Mr. Midkiff did, in fact, have silicosis, at the very least, a genuine issue of material fact exists as to when Mr. Midkiff, as an ordinary reasonably prudent person, would have known of his diagnosis of silicosis. Accordingly, the Defendant's motion for summary judgment should be denied.

        Respectfully submitted,

        MALONEY★MARTIN, LLP

        /s/ Mike Martin  
        Mike Martin  
        Federal #5200604  
        TX #13094400  
        The Clocktower Building  
        3401 Allen Parkway, Suite 100  
        Houston, Texas 77019  
        Telephone: (713) 759-1600  
        Facsimile: (713) 759-6930  
        E-Mail: mmartin@maloneymartinllp.com

           Zane Cagle
           MO #53775, Fed. #499604
           1232 Washington Ave., Ste. 220
           St. Louis, Missouri  63103
           T:  (314) 241-4555
           F:  (314) 241-4556
           E-Mail:  zane@pagecagle.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

  Pursuant to Rule 5 of the Federal Rules of Civil Procedure, I hereby certify that a true and correct copy of the foregoing document has been provided to all counsel of record and/or attorneys-in-charge via Certified Mail, Return Receipt Requested, and/or via facsimile, and/or via hand delivery, and/or via U.S. Mail on this the __5th__ day of January, 2010.

           /s/ Mike Martin
          MIKE MARTIN