UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID MIDKIFF, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) No. 4:08CV1221RWS |
| | ) |
| 3M COMPANY, as Successor by Merger | ) |
| to Minnesota Mining and | ) |
| Manufacturing Company, and/or | ) |
| Its Predecessors/Successors | ) |
| in Interest, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT 3M COMPANY'S REPLY**
**TO PLAINTIFFS' RESPONSE TO 3M'S MOTION FOR SUMMARY JUDGMENT**

For its Reply To Plaintiffs' Response to 3M's Motion For Summary Judgment, Defendant, 3M Company, states as follows:

Defendant, 3M Company, has moved for summary judgment based on the Missouri 5-year statute of limitations for product liability and bodily injury claims under section 516.120(4). Mo. Rev. Stat. § 516.120(4). Section 516.100 explains that a cause of action begins to run "when the damage resulting therefrom is sustained and is capable of ascertainment." Mo. Rev. Stat. § 516.100. In this case, Plaintiff filed his Complaint on August 21, 2008,[1] and his claims are time-barred because his damages were sustained and capable of ascertainment prior to August 21, 2003.

---

[1] *See* Plaintiff's August 21, 2008, Complaint, ¶ 12, Docket Document # 1.

> **A.    The objective facts found in Plaintiff's medical record demonstrate that Plaintiff was diagnosed with silicosis, and was clearly aware of his diagnosis, prior to August 21, 2003.**

In support of its Motion for Summary Judgment, 3M demonstrated that Plaintiff, David Midkiff, was diagnosed with silicosis in 2002. 3M first cited to a Barnes-Jewish Hospital January 18, 2002, CT Scan reviewed by Dr. Jeffrey J. Bowman, which revealed that Plaintiff had a "fine diffuse upper lobe small nodules with fine nodular upper lobe pleural thickening" "*most consistent with silicosis, especially given this patient's history*." (Emphasis added.) (3M's Memorandum of Law in Support of Motion for Summary Judgment, Docket Document #37 (hereinafter "3M's Memorandum"), Barnes-Jewish Hospital Chest Computed Tomography dated January 18, 2002, Exhibit A.) 3M also cited an August 2, 2002, a note written by Dr. Peter Tuteur of Washington University in St. Louis School of Medicine Department of Internal Medicine, Pulmonary Division, who examined Plaintiff after he was referred by his family physician, Dr. Michael Toney of Piedmont, Missouri, for further evaluation of Plaintiff's pulmonary status. (3M's Memorandum, Dr. Peter Tuteur Washington University in St. Louis School of Medicine, Department of Internal Medicine, Division of Pulmonary, Note at p. 1, visit dated August 2, 2002, Exhibit B.)

Dr. Tuteur specifically diagnosed Plaintiff "*physiologically and radiographically significant silicosis* associated with impairment of gas exchange exercise as well as a reduced diffusing capacity" "based on the totality of available data." (Emphasis added.) (3M's Memorandum, Exhibit B at 2-3.) Dr. Tuteur recommended that Plaintiff "be either reassigned, *and/or protected from continuation of significant exposure to the inhalation of silica material in his work place*." (Emphasis added.) (3M's Memorandum, Exhibit B at 3.)

3M went on to objectively demonstrate through the medical records that Plaintiff was *aware* of his silicosis diagnosis at least by early 2003, as he *reported* the diagnosis in a follow-up February 4, 2003, appointment to his family physician at the Piedmont (Missouri) Family Clinic:

> The pt forgot to bring his report from yearly health evaluation at work. **The pt reports that he said he had silicosis as well as the need to rule out TB**. The pt has had prior negative TB tests in the past.

(Emphasis added.) (3M's Memorandum, Piedmont Family Clinic Progress Note dated February 4, 2003, Exhibit C.) In addition, 3M referred the Court to an August 18, 2003, Piedmont Family Clinic note which indicated an impression of "*Silicosis*" and stated that Plaintiff reported:

> **[H]e has seen a specialist who told him that he should not be working.** This was on May 22. The patient reports that he still has not heard anything.

(Emphasis added.) (3M's Memorandum, Piedmont Family Clinic Progress Note dated August 18, 2003, Exhibit D.)

### B. Plaintiff improperly attempts to draw unfavorable inferences and refute objective facts through unsupported, self-serving allegations.

Contrary to the objective evidence before this Court, Plaintiff argues in his Response to 3M's Motion for Summary Judgment, Docket Document #39 (hereinafter "Response") that David Midkiff, was *confused* as to his "actual medical condition" between the years 2002 and 2003 because of "conflicting medical reports" from his doctors, and was "unable to ascertain whether he suffered from any occupational lung disease and whether he had a compensable injury or an ordinary disease of life." (*See* Plaintiffs' Response, p. 4.) In support of this argument, Plaintiff refers the Court to the August 14, 2002,[2] medical record of W. Mark Breite, M.D., a pulmonologist at Thoracic & Critical Care Medicine in Festus, Missouri. (Plaintiff's

---

[2] Plaintiff's August 14, 2002, office visit with Dr. Briete occurred twelve days after Dr. Tuteur diagnosed him with silicosis.

Response, Exhibit A.)  Dr. Briete's office note indicates that Plaintiff reported Dr. Tuteur's diagnosis of silicosis, but that Dr. Breite opined the "patient does not have a typical pattern for this disorder in [his] opinion and [he] respectfully disagree[s] with Dr. Tutor [*sic*]."  *Id.*  Plaintiff argues that because of this August 14, 2002, note, and because "Dr. Breite had been treating Mr. Midkiff for a longer period of time," he could not have been placed on notice of his injury "at the time of Dr. Tuteur's diagnosis in 2002."  (*See* Plaintiffs' Response, p. 7.)

To support this assertion, Plaintiff relies on his own self-serving affidavit, which conveniently attempts to explain that he was unsure of his medical condition until a *second* doctor, Dr. Joseph Ojile, diagnosed him with silicosis on September 10, 2003, and he was placed on leave from work.  (*See* Plaintiffs' Response, Exhibit D.)  However, "[e]ven then," Plaintiff alleges, he "was unsure of his actual diagnosis and medical condition."  *Id.*

> **i.    Eighth Circuit case law directs that opposition to summary judgment may not be defeated by the use of self-serving affidavits.**

"At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "However, a properly supported summary judgment is not defeated by self-serving affidavits."  *Id.*  *See also Davidson & Assoc. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

In *Conolly*, the Plaintiff in a breach of contract suit argued that the district court failed to give him the benefit of all reasonable inferences to be drawn from the evidence.  *Conolly*, 457 F.3d at 876.  The plaintiff argued the court improperly focused on a prior e-mail correspondence submitted by the defendant in support of his motion for summary judgment, and ignored plaintiff's submitted affidavit testimony which attempted to *explain* the terms of a purchase price

4

set forth in the e-mail.

Holding that the district court did not commit error in concluding as a matter of law that there was no issue of material fact concerning whether the parties intended to be bound by their agreement, the 8th Circuit reasoned it *could not* draw favorable inferences from the plaintiff's "unsupported, self-serving affidavit stating his subjective views." *Id* at 876-877. The Court explained that plaintiff's "subjective statements expounding on the terms of the oral agreement or explaining his use of the word 'preliminary' in correspondence [were] immaterial to the question of whether there is an objective manifestation of an intent to be bound." *Id* at 876.

> ii. **The objective medical record before the Court does not substantiate the allegations contained in Plaintiff's affidavit and is in direct contradiction to Plaintiff's self-serving claims.**

In the case at bar, Plaintiff has not, and *cannot*, refer the Court to any *objective* evidence demonstrating that David Midkiff was "confused" as to his silicosis diagnosis prior to September 10, 2003, when, (like Dr. Tuteur had done previously on August 2, 2002) Dr. Ojile on diagnosed him with silicosis, and when he was placed on leave from work he discontinued working at ISP, his employer. (*See* Plaintiffs' Response, Exhibit D.) In fact, the medical records before the Court are in direct odds with Plaintiff's self-serving affidavit testimony and do not support Plaintiff's alleged state of confusion.

Plaintiff argues that he became confused as to whether he suffered from silicosis at his August 14, 2002, visit with Dr. Breite, where Dr. Breite's note indicated he disagreed with Dr. Tuteur's silicosis diagnosis twelve days prior. *Id.* However, as stated previously, *despite Dr. Breite's August 14, 2002, medical record, Plaintiff only reported Dr. Tuteur's August 2, 2002, silicosis diagnosis* at his February 4, 2003, Piedmont Family Clinic appointment:

> The pt forgot to bring his report from yearly health evaluation at work. ***The pt reports that he said he had silicosis as well as the need to rule out TB***. The pt has had prior negative TB tests in the past.

(Emphasis added.) (3M's Memorandum, Piedmont Family Clinic Progress Note dated February 4, 2003, Exhibit C.) Plaintiff does not cite to, and the medical record does not contain, *any* reference to Plaintiff "questioning" his August 2, 2002, silicosis diagnosis.[3]

Additionally, the August 18, 2003, Piedmont Family Clinic note previously cited by 3M also indicated the physician's impression of "*Silicosis,*" despite Plaintiff's affidavit testimony indicating physician confusion and disagreement, and despite Dr. Breite's August 14, 2002, medical record. (3M's Memorandum, Piedmont Family Clinic Progress Note dated August 18, 2003, Exhibit D.) Plaintiff further reported his health concerns to his family physician at this visit:

> **[H]e has seen a specialist who told him that he should not be working.** This was on May 22. The patient reports that he still has not heard anything.

(Emphasis added.) *Id.* Plaintiff's statement at the August 18, 2003, visit indicates his continued advocacy for his health, and his concern that he should *not* be working.

### C. Under Missouri law, Plaintiff's silicosis diagnosis was capable of ascertainment to Plaintiff prior to August 21, 2003.

Plaintiff argues in his Response that he never received "a single *undisputed* diagnosis" of silicosis and that, despite the medical records cited above indicating Mr. Midkiff's knowledge of the diagnosis, it was not until *he filed a claim for disability* on September 12, 2003, "that one might reasonably infer that Mr. Midkiff knew or should have known of his diagnosis of

---

[3] Plaintiff points out in his affidavit that when he made this statement to his doctor (which Plaintiff does not deny), he was explaining to his family physician "only what the doctor 'said' not that I actually had the illness." (*See* Plaintiffs' Response, Exhibit D.) 3M does not dispute this fact. Plaintiff is not a physician and cannot make diagnoses. Plaintiff can only report what he was told – in other words, what he was *aware of* – based on the diagnoses of his physicians.

6

silicosis." (Emphasis added.) (*See* Plaintiffs' Response, pp. 7-8.) These arguments, however, are unsupported by Missouri precedent.[4]

As stated in 3M's Motion for Summary Judgment, *Elmore v. Owens-Illinois, Inc.*, 673 S.W.2d 434 (Mo. banc 1984), a case involving exposure to *asbestos* fibers, is instructive regarding exactly *when* the damage resulting from a cause of action "is sustained and is capable of ascertainment." Mo. Rev. Stat. § 516.100. In *Elmore,* the Missouri Supreme Court simply specified that a *diagnosis* of injury was necessary in order for the statute of limitations time to begin running:

> Although [plaintiff] knew as early as 1973 that he had shortness of breath, and knew also, from reading publications of his union, that long-term breathing of asbestos caused asbestosis, he did not know that his condition was asbestosis until it was diagnosed by his physician on May 13, 1976. It was not until such diagnosis was made that the character of the condition (asbestosis) and its cause (breathing asbestos dust) first "***came together***" for the plaintiff. Thus, plaintiff's cause of action accrued on May 13, 1976, the date of the diagnosis made by his doctor at her office in Kansas City and was not barred by Missouri's five-year statute, the appropriate statute of limitations.

(Emphasis added.) *Id* at 436. *See also Ray v. Upjohn Co.*, 851 S.W.2d 646 (Mo. Ct. App. 1993) (where the date of the diagnosis was the event that triggered the statute of limitations) and *Hogan v. Armstrong World Inds.*, 840 S.W.2d 230, 234-35 (Mo. Ct. App. 1992) (determining that plaintiff's asbestosis was not ascertainable where plaintiff's physician only stated in 1974 that a pleural effusion was "consistent" with asbestosis, and plaintiff was not diagnosed with asbestosis until 1985).

---

[4] Arguments unsupported by precedent are unpersuasive and should be rejected. *Little Gem Life Sciences LLC v. Orphan Medical, Inc.*, 537 F.3d 913, 917 (8th Cir. 2008)

Plaintiff incorrectly relies on the *Powel v. Chaminade College Preparatory, Inc.*, 197 S.W.2d 576 (Mo. 2006), case for the proposition that "the statute of limitations begins to run when the 'evidence was such to place a reasonably prudent person on notice of a potentially actionable injury.'" *Powel*, 1977 S.W.2d at 582. However, *Powel* is distinguishable from the case at bar because it involves the very limited issue of claims resulting from sex abuse allegations. In *Powel*, the Missouri Supreme Court framed the issue to be determined as follows:

> While it is clear that the record contains conflicting evidence of what [Plaintiff] knew at what point, **the salient issue for statute of limitations purposes is whether these conflicts in evidence create a question of fact on** the key issue whether, <u>prior to his alleged memory repression</u>, *a reasonable person in Michael's position would have known or been put on inquiry notice not just of the wrong and nominal immediate injury therefrom, but also that substantial, non-transient damage had resulted and was capable of ascertainment*.

(Emphasis added.) *Id* at 578. Though Plaintiff is correct in characterizing as "exhaustive" the *Powel* court's review and discussion of the "capable of ascertainment" standard, said review is completely inapplicable to the case at bar because, as the Missouri Supreme Court stated, "the standard to be gleaned from [the court's review of prior cases] has **special application to cases of repressed memory**." (Emphasis added.) *Id* at 584.

Plaintiff also incorrectly relies on *Hogan v. Armstrong World Inds.*, 840 S.W.2d 230, 234-35 (Mo. Ct. App. 1992), for the general proposition that "contradictory conclusions may be drawn from the evidence." (*See* Plaintiffs' Response, pp. 7-8.) However, *Hogan* does *not* support Plaintiff's argument that Dr. Tuteur's August 2, 2002, diagnosis is not the controlling date because it was rejected by Dr. Breite on August 14, 2002. *Id.* Instead, *Hogan* upheld a trial court's denial of defendant's motion for directed verdict based on the statute of limitations for two reasons: 1) the defendant relied on the date of plaintiff's lung x-ray which was never

submitted into evidence, and 2) plaintiff testified at trial that he never heard from his doctor on the diagnosis. *Hogan v. Armstrong World Inds.*, 840 S.W.2d at 234.

Unlike *Hogan*, in the instant case it is clear through: 1) Plaintiff's January 18, 2002, CT Scan, 2) the August 2, 2002, diagnosis of Dr. Tuteur and 3) Plaintiff's own comments to his family physician noted in the February 4, 2003, and August 18, 2003 Piedmont Family Clinic office notes, that Plaintiff was diagnosed with silicosis and *aware* of his diagnosis prior to August 21, 2003. (*See* 3M's Memorandum, Exhibits A-D.) Because Plaintiff failed to file his claim within the applicable 5-year statute of limitations under Missouri law, his claims are time barred and motion for summary judgment is appropriate and should be granted.

**CONCLUSION**

As demonstrated through 3M's proper, objective evidence, it is clear that Plaintiff was capable of ascertaining his damages more than five years before he commenced this cause of action (i.e., before August 21, 2003). Accordingly, Plaintiff's August 21, 2008, claims against 3M are barred by Missouri's five-year statute of limitations. Despite Plaintiff's improper, self-serving affidavit submitted in support of his Response, no genuine issue of material fact exists, and therefore, 3M is entitled to summary judgment as a matter of law. Defendant 3M Company respectfully requests that this Court enter an order granting Defendant 3M Company summary judgment in its favor and against Plaintiff David Midkiff, plus the costs of this suit.

Respectfully submitted,

By: <u>/s/ John J. Kurowski</u>
    John J. Kurowski, #62256
    Kurowski, Bailey & Shultz, LLC
    24 Bronze Pointe
    Belleville (Swansea), IL 62226
    (618) 277-5500
    Fax: (618) 277-6334
    E-mail: jkurowski@kbslf.com
    ATTORNEYS FOR DEFENDANT
    3M COMPANY

By: <u>/s/ Lawrence King</u>
    Lawrence R. King, Admitted Pro Hac
    Larson King, LLP
    2800 Wells Fargo Place
    30 E. 7th Street
    St. Paul, MN 55101
    Phone: 651-312-6500
    Email: lking@larsonking.com
    ATTORNEYS FOR DEFENDANT
    3M COMPANY

**PROOF OF SERVICE**

   The undersigned certifies that a copy of the foregoing 3M's Reply to Plaintiffs' Response to Motion for Summary Judgment was sent to all counsel of record via Eastern District of Missouri electronic filing this 12th day of January, 2010.

Mike Martin
Maloney Martin, L.L.P.
3401 Allen Parkway, Suite 100
Houston, TX  77019
E-mail: mbmartin@mmmllp.com
Attorneys for Plaintiff

Zane T. Cagle
PAGE CAGLE
1232 Washington Ave., Suite #220
St. Louis, MO  63103
E-mail: zane@pagecagle.com
Attorneys for Plaintiff

W. Jeffrey Muskopf
Michael J. Smith
Lashly & Baer, P.C.
714 Locust Street
St. Louis, MO  63101
Phone: 314-621-2939
E-mail: jmuskopf@lashlybaer.com
Attorneys for Defendant Mine Safety Appliances

         /s/ John J. Kurowski
         ATTORNEYS FOR DEFENDANT
         3M COMPANY